Luis Rodríguez et al., Petitioners, v. Eduardo J. Saldaña, Executive Secretary of Porto Rico, Respondent.

No. 9.   Decided June 20, 1928.

*Bolívar Pagán* for the petitioners.

Mr. Justice Hutchison delivered the opinion of the court.

The third and fourth paragraphs of the third attempt on the part of petitioners to show why this court should entertain the proposed proceeding for an injunction read as follows:

"III. That by motion of the 23rd instant setting up an additional ground, which they considered and now consider sufficient, the petitioners renewed their prayer that this court take cognizance of their petition, inasmuch as for a similar reason this Supreme Court has taken original jurisdiction of numerous cited cases similar to this case.

"IV. That on the 24th instant this Supreme Court impliedly admitted the reasons alleged by the petitioners in averment XVI of the petition as amended and entered another order denying again the issuance of the writ prayed for, stating then as a new reason that the court lacks the necessary time for hearing the parties because of the large number of cases pending decision and the proximity of its vacation period, and stating further that it had not been shown that the Supreme Court has original jurisdiction of this matter."

The order of May 24th now complained of is set forth verbatim in the margin of the Spanish text (38 D.P.R. 397).

The only additional reason for invoking the original jurisdiction of this court, adduced in paragraph XVI of the petition as amended in the previous motion of petitioners, was

the suggestion contained in subdivision (d) of the said paragraph as amended, to the effect that the present controversy involves questions of such importance as the legality of Legislative Sessions and the construction of the Organic Act with reference to the constitutional limitations placed upon the powers of the Legislature.

The only authority cited by petitioners in support of this newly discovered ground for an application to the Supreme Court, instead of to the district court, was and is *Municipality of Quebradillas* v. *The Executive Secretary,* 27 P.R.R. 138.

In denying the former motion this court distinguished the *Quebradillas Case* by pointing out that it involved not only the matters indicated by petitioners herein, but also a question as to certain powers of the Chief Executive. The element of time in that case was emphasized to show that there was no necessity for a speedy and final determination of the controversy. Another ground of distinction was that the case was decided more than ten years ago under conditions quite diifferent from those existing today. Mention might have been made of the matter of recess appointments indirectly involved and incidentally discussed, as a feature of greater practical importance than the question actually decided as to the pocket veto.

In the previous motion petitioners cite a number of other cases, not as they now claim in support of the additional reason assigned for invoking the original jurisdiction of this court, but in connection with the first ground as set forth in subdivision (a) of paragraph XVI of the original petition, and, without change or modification, in the first subdivision of the proposed amendment. In disposing of the previous motion these cases were clearly distinguished upon grounds that need not be restated here. The reference in that ruling to *Todd* v. *Saldaña,* 33 P.R.R. 656, and to the peculiar situation with which this court was confronted therein, was intended merely to illustrate the unwisdom of assuming jurisdiction in a more or less difficult and complicated case which of neces-

sity would be submitted within a few days before the beginning of a vacation period already fixed by law and not subject to change at the pleasure or convenience of this court. The next paragraph of the ruling indicates the practical impossibility of deciding before November the questions sought to be submitted by petitioners. The fact that numerous other cases of equal or greater importance were already submitted and pending decision, or else set for a hearing, was mentioned, in passing, for whatever value the suggestion might have as a makeweight.

Petitioners, then, in their previous motion, did not cite, in support of any new and additional reason for applying to the Supreme Court in the first instance, numerous cases, similar to the case at bar, in which this court had exercised original jurisdiction. Certainly the court did not intend, tacitly or otherwise, to accept as sufficient any of the reasons assigned by petitioners in the proposed amendment of paragraph XVI of the petition, all of which, except the last and only additional ground suggested, had been definitely rejected as inadequate by a previous ruling. The second ruling, *supra*, was not based in any way upon a want of time in which to hear petitioners, as now claimed by them, but rather, incidentally and in part, upon the practical impossibility of reaching a final decision, after hearing all parties concerned and before adjournment.

One of the reasons, if not the principal reason, assigned in the original application and insisted upon in the subsequent motion as a ground for invoking the original jurisdiction of this court, was the delay which would be involved in obtaining a final determination of the controversy in the event of an appeal by defendant from a decree in favor of petitioners. An obvious answer to this suggestion was the outstanding fact that in all human probability and, owing to circumstances over which this court had no control, little or nothing in the way of time would be gained by petitioners through the proposed exercise of original jurisdiction.

It is fair to add in this connection that in disposing of the previous motion we overlooked the fact that the delay anticipated by petitioners was based upon the hypothesis of a judgment favorable to them and an appeal therefrom by defendant. Petitioners, however, do not now complain of this oversight, and so slight a variation in the contemplated hypothetical case does not affect the soundness of the conclusion already reached. In our former ruling we declined to assume, as petitioners at that time were thought to have assumed, that the district court would hold an unconstitutional law to be constitutional. Neither can we now assume with petitioners that the law assailed by them is unconstitutional, nor that defendant would appeal from the judgment of the district court holding the said law to be unconstitutional. In any event, the element of time involved, and the desirability of having the benefit of a previous decision by a district court upon questions of this kind, remain unchanged and, we may add, petitioners have not at any time pointed out how the mere failure to obtain a final decision as to the constitutionality of the law in question, before the date upon which that law purports to take effect, could result in any very great or irreparable injury to petitioners.

"Although appellate courts are very generally invested with original jurisdiction in certain matters, and have certain jurisdiction incidental or ancillary to their appellate powers, the principal function of such courts is the exercise of supervision over the subordinate courts, and the correction of errors which the latter courts have committed." 15 C. J. par. 445, page 1025.

As a starting point for further investigation the attention of counsel is also invited to paragraph 112, at page 1076 of 7 R.C.L. from which (without approval or disapproval of the text) we take the following extract:

"The distinction must be observed between the prerogative writs, mandamus, quo warranto, certiorari and the like, and the nonprerogative writs which bear the same name; in other words, between writs which issue for prerogative purposes—that is, in

general, purposes publici juris—and writs which issue for the vindi-cation and enforcement of merely private rights. The distinction is to be looked for and is readily found, in the general constitution and functions of the appellate courts and the inferior courts. The writs are given to the inferior courts as an appurtenance to their general original jurisdiction; to the appellate court for jurisdiction. The lower courts take the writs with unlimited original jurisdiction of them, because they have otherwise general original jurisdiction. Other original jurisdiction is prohibited to an appellate court, and the jurisdiction given by the writs is essentially a limited one. The lower courts take the prerogative writs as part of their general jurisdiction, with power to put them to all proper uses, while an appellate court takes the prerogative writs for prerogative jurisdic-tion, with power to put them only to prerogative uses proper. When the original jurisdiction of an appellate court is invoked, leave to proceed should in all cases be first obtained from the court itself, upon a prima facie showing that the case is a proper one for its cognizance.''

At page 19, paragraph 1, 32 C. J., it is said:

''The writ of injunction is not in itself a prerogative writ, but it is sometimes put to prerogative purposes, for example, when it is sued out in behalf of the sovereign or state in aid of the juris-diction to enforce trusts and prevent public nuisances or to enjoin the abuse of trust powers.''

In a note to the text last above quoted we find this state-ment:

''(a) In Wisconsin, by reason of a provision in the constitution, it has been held that injunction is a quasi prerogative writ, when-ever a question arises appropriate to its use. State v. Milwaukee, 102 Wis. 509, 78 NW 756; State v. Cunningham, 81 Wis. 440, 51 NW 724, 15 LRA 561; Atty. Gen. v. Eau Claire, 37 Wis. 400; Atty. Gen. v. Chicago, etc., R. Co., 35 Wis. 425.''

In the absence of any provision similar to that contained in the constitution of Wisconsin, either in the Organic Act or in the local law, which confers upon this court a power to issue writs of injunction, we need not now determine whether or not in construing a like constitutional or statutory

provision, we would follow the precedent established by the Wisconsin courts.

In the motion now under consideration petitioners refer to the second paragraph of General Order 118 of August 16, 1899, concerning the reorganization and functions of the judiciary (Comp. St. 1911, sec. 6680) as conferring upon the Supreme Court general jurisdiction in all civil and criminal matters. There is no argument in support of the proposition here submitted by petitioners. In the circumstances it will suffice to say that the paragraph in question must be construed in connection with other provisions contained in the same Military Order, and in accordance with certain cardinal principles of statutory construction.

We need not challenge the statement of counsel for petitioners to the effect that "An act establishing the Supreme Court of Porto Rico as a court of appeals, approved March 12, 1903," (Comp. St. 1911, section 1141) did not curtail the powers of the Supreme Court as constituted by General Order 118, *supra*, and recognized by the first Organic Act. The law of 1903, however, offers a significant suggestion in the way of contemporaneous legislative construction. The first section of that law begins with the statement "That the Supreme Court of Porto Rico shall hereafter be a court of appeals and not a court of cassation."

A court of cassation is defined in 15 C. J., page 687, as "The highest court in France; so termed from possessing the power to quash (casser) the decrees of inferior courts."

Next petitioners assert that the jurisdiction of this court in matters of the kind now under consideration has been definitely determined by an act approved March 8, 1906, entitled "An act to define injunctions and to prescribe when they may be issued, and to repeal an act authorizing injunctions, approved March first, nineteen hundred and two, and all laws in conflict herewith." Comp. St. sections 1354-1368.

Section 2 of that law reads thus:

362

"The Supreme Court, or any judge thereof, may issue injunctions *to enforce the jurisdiction of said court,* under the regulations prescribed by law. And the judges of the respective district courts may issue injunctions *in all cases in which such process may be properly issued."* (Italics ours).

We do not have access to *Barret* v. *Watts,* 13 S. C. 441, *Hutsonpiller* v. *Stover,* 12 Gratt. (53 Va.) 579, and *Kimbal* v. *Neal,* 44 Vt. 567. In none of the other cases cited by petitioners do we find any discussion of the jurisdiction or power of appellate tribunals to issue writs of injunction.

The motion must be denied.